PITTSBURGH LIFE & TRUST CO. v. NORTHERN CENTRAL LIFE INS. CO.

(Circuit Court of Appeals, Third Circuit. November 22, 1906.)

No. 1.

1. FRAUD—ACTION FOR DECEIT—GROUNDS.

To sustain an action for deceit, there must have been a fraudulent intention on the part of defendant to deceive the plaintiff, and a false statement, made through carelessness, although without reasonable ground for believing it to be true, is not fraudulent if it was made in the honest belief that it was true.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, §§ 2, 4, 5.]

2. SAME—FACTS CONSIDERED.

The fact that written statements, furnished by officers of an insurance company in negotiations for the sale of its property and business, were incorrect with respect to premiums collected and sums due from its agents, will not support an action for deceit by the purchaser, where it appears that the statements were prepared by employés for the company's own use prior to the negotiations, and there is no evidence whatever that the officers representing the company in such negotiations knew them to be inaccurate, or of any intention to deceive the purchaser.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, §§ 2, 4, 5.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 140 Fed. 888.

Frank Ewing and John S. Ferguson, for plaintiff in error.

W. S. Dalzell and Harold W. Fraser, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and LANNING, District Judge.

LANNING, District Judge. This is an action for deceit. The plaintiff, the Pittsburgh Life & Trust Company, avers that on August 3, 1903, it entered into a contract with the defendant, the Northern Central Life Insurance Company of Ohio, in which the plaintiff agreed

to reinsure the policies of insurance issued by the defendant in force on August 1, 1903, and pay the defendant $104,515.30, in consideration for which the defendant agreed to transfer to the plaintiff certain mortgages, money, and other property particularly described in the plaintiff's statement of its case, and that, upon the execution of the contract, the plaintiff paid to the defendant the said sum of $104,515.30, and the defendant transferred to the plaintiff the said mortgages, money, and other property. The plaintiff also avers that previous to the execution of the agreement, and while negotiations between the parties were pending, the defendant, by its agents and officers, made to the plaintiff the following false and fraudulent representations: (1) That the defendant had just and valid claims against its agents amounting to the sum of $7,254.54, whereas, in fact, $5,000 of that amount was fictitious; (2) that no premiums falling due after August 1, 1903, upon policies reinsured by the plaintiff had been collected by the defendant, whereas such premiums to the amount of $2,501.18 had been collected by the defendant; (3) that the total amount of reserve required upon the defendant's policies in force on August 1, 1903, was $249,947, whereas by reason of a number of policies known as "Guaranteed Return Premium Policies" the reserve should have exceeded that sum by $3,090; and (4) that the total amount of reserve required upon the defendant's policies in force on August 1, 1903, was $249,947, whereas by reason of a number of policies known as "Special Guarantee Policies" the reserve should have exceeded that sum by $4,155. Each of these representations, it is further averred, was well known to the defendant, its agents, and officers to be false and fraudulent, and that the plaintiff was thereby deceived and suffered damage to the extent of $14,746.18.

The leading English case concerning the doctrine underlying an action for deceit is Pasley v. Freeman, 3 T. R. 51, decided in 1789. From this case, and the case of Derry v. Peek, L. R. 14 App. Cas. 337, decided by the House of Lords in 1889, the following rule is extracted and stated in 12 English Ruling Cases, at page 235:

"When a person, with a view to influence the conduct of another, willfully leads him into a false belief, and this other person acts accordingly to his hurt, the act is said to have been induced by fraud; and the former is liable to the latter in damages in an action for deceit. To constitute the fraud, it is not essential that the defendant was, or expected to be, benefited by the deceit; but it is essential that he should have been guilty of willful falsehood (or at least reckless disregard of truth) in the representations made."

This, by the decided weight of authority, sets forth the American doctrine on the same subject. To sustain an action for deceit, there must be fraud in the defendant, intention to deceive the plaintiff, and damage to the plaintiff. A false statement made through carelessness and without reasonable ground for believing it to be true may be evidence of fraud, but it does not necessarily amount to fraud. If made in the honest belief that it is true, it is not fraudulent, and does not support an action for deceit. Lord v. Goddard, 13 How. 198, 211, 14 L. Ed. 111; Ming v. Woolfalk, 116 U. S. 599, 6 Sup. Ct. 489, 29 L. Ed. 740; Marshall v. Hubbard, 117 U. S. 415, 6 Sup. Ct. 806, 29 L. Ed. 919; Union Pacific Railway Co. v. Barnes, 64 Fed. 80, 12 C. C. A. 48; Kimber v. Young, 137 Fed. 744, 70 C. C. A. 178.

Applying this rule to the case in hand, it would have been the duty of the court to submit the case to the jury, and not to have given judgment of nonsuit, as was done, provided there was any evidence from which the jury might properly have inferred that any agent of the defendant having authority to bind it by his representations knew, when the negotiations for the contract which led to its execution were pending, that the written statements of the defendant's policies, of the premiums collected and of the balances due from its agents, presented to the plaintiff, were false, and that they were presented with intent to deceive and injure the plaintiff. But we think the case is utterly barren of any evidence which would justify such an inference. It does not appear by whom the statements were prepared. The evidence, as it stands, proves that they were incorrect, but they were prepared some years before the plaintiff was organized and while the defendant was carrying on its business without any purpose of disposing of it, and were relied on as correct by the defendant in the transaction of its own business. Presumably the errors were the result of carelessness on the part of bookkeepers or other subordinate employés of the defendant. The proofs in the case fail to show that any of the officers of the defendant with whom the plaintiff carried on its negotiations leading up to the contract of August 3, 1903, had any knowledge whatever that the statements were incorrect, and there is nothing showing or tending to show that there was any intent on the part of any of those officers, or, indeed, of any of the employés or agents of the defendant, to deceive the plaintiff. We think, therefore, that the judgment of nonsuit was properly entered.

This conclusion makes it unnecessary for us to consider the other questions raised by the assignments of error and discussed by counsel, namely, whether the plaintiff is estopped by having undertaken to make for itself an investigation of the defendant's condition, or whether the court below was right in the views expressed on the subject of loss or damage to the defendant. On neither of these questions do we express any opinion.

The judgment of the Circuit Court will be affirmed, with costs.