# HARTFORD LIFE INSURANCE COMPANY ET AL. *v.* HOPE.

[No. 5,892. Filed June 5, 1907. Rehearing denied October 11, 1907. Motion to retax costs sustained October 11, 1907.]

1. PLEADING.—*Complaint.—Misrepresentations.—Existing Facts.— Insurance.*—Averments in a complaint that defendant insurance company and its agents falsely represented to plaintiff that it was issuing a policy with certain provisions and would issue him one of the same if he would execute to it his note for a certain amount, are allegations of existing facts; and a complaint founded thereon for deceit is sufficient. p. 357.

2. FRAUD.—*Opinions.—Future Matters.*—Fraud consists, not in the expression of one's intentions or opinions merely, but in the misrepresentations of existing facts, or in misrepresenting, as a fact, a matter to occur in the future. p. 358.

3. DECEIT.—*Intent.—Fraud.—Damages.*—The gist of an action in deceit for damages for fraud, is the defendants' evil intent—the intent to deceive. p. 358.

4. SAME.—*Intent.—Rescission.—Cancelation.*—The action in deceit, being founded upon defendants' moral delinquency, requires proof of evil intent—false representations made with intent to deceive; while a suit for rescission or cancelation may be maintained without such proof. p. 359.

5. SAME.—*Evidence.—Essentials.*—To establish deceit there must be proof of false representations made (1) knowingly, or (2) without belief in their truth, or (3) recklessly, careless whether they be true or false. p. 360.

6. EVIDENCE.—*Similar False Representations to Others.—Deceit.— Insurance.*—In an action in deceit for damages caused by false representations, made by an insurance company and its agents, evidence of similar false representations, made by such agents to others, is admissible on the question of fraudulent intent. p. 362.

7. TRIAL.—*Instructions. — Deceit. — Concealment.—When Fraudulent.—Insurance.*—An instruction, in an action in deceit against an insurance company and its agents for false representations causing damage, that if defendants undertook to explain to plaintiff the benefits accruing from its policy, and concealed the fact that if he died from smallpox without being vaccinated, the plaintiff being unvaccinated at the time, to defendants' knowledge, such concealment would constitute a fraud, is correct. p. 364.

8. SAME.—*Instructions.—Damages.—Amount of.—Fraud.*—An instruction, in an action in deceit against an insurance company and its agents for falsely representing an insurance policy, that plaintiff was entitled to recover the amount he had been compelled to pay on account of defendants' fraud, with interest, together with all other damages proximately caused by such fraud, is correct. p. 365.

9. SAME.—*Instructions.—Damages.—Punitive. — Insurance. — Misrepresentations.*—An instruction, in an action in deceit against an insurance company and its agents for falsely representing an insurance policy, that if the jury find that the defendants wilfully deceived plaintiff, to his injury, in misrepresenting an insurance policy, they might assess punitive damages, is incorrect, since such conduct constitutes a crime. p. 366.

10. FALSE PRETENSES.—*Insurance Policies.—Misrepresentations.*— The securing of a person's bankable note in payment of the premium on an insurance policy, the provisions of which have been falsely misrepresented by the accused, constitutes a violation of §2352 Burns 1901, Acts 1883, p. 126, §1, providing that the making of such misrepresentations shall constitute a crime. p. 367.

11. DAMAGES.—*Principal and Agent.—Insurance.*—An insurance company, which is liable only by the fraudulent acts of its agents

in misrepresenting the provisions of its policy, cannot be liable in deceit for a greater sum than that for which such agents are liable. p. 367.

12. DAMAGES.—*Separation of.—Appeal.—Final Judgment.*—Where damages assessed consist of $32.32 on account of the payment of a note, and $250 for damages generally, and the evidence shows only the damage caused by the payment of the note, a final judgment will be directed for such amount on plaintiff's filing a remittitur for the remainder: p. 367.

13. COSTS.—*Remittitur.—Affirmance.*—Ordinarily, where a judgment is affirmed on condition that a remittitur is filed by appellee, the costs fall upon appellee; but such rule is subject to variance in the discretion of the court. p. 368.

14. SAME. — *Misrepresentations. — Insurance.*—Where defendants' wilful acts caused plaintiff injury and his recovery was larger than the evidence warranted, the plaintiff's conduct being fair, the Appellate Court may tax the costs of an appeal against it; where the case is affirmed on condition that appellee file a remittitur. p. 368.

From Hamilton Circuit Court; *Ira W. Christian*, Judge.

Action by Edgar Hope against the Hartford Life Insurance Company and others. From a judgment for plaintiff, defendants appeal. *Affirmed conditionally.*

*Kane & Kane,* and *Binford & Walker,* for appellants.
*Charles L. Tindall,* for appellee.

HADLEY, J.—This is an action in deceit by appellee against appellants and Ora F. Boyce for damages, the basis of the action being fraudulent representations made by appellant Walker and said Boyce, as agents of appellant insurance company, in procuring from appellee an application and a note for the first year's premium for life insurance. A demurrer was filed to the complaint, which was overruled. Answers in general denial by appellants; trial by jury; verdict and judgment for appellee against appellants, the insurance company and Walker, and against appellee for costs in favor of Boyce. Appellants filed separate motions for a new trial, which were overruled.

Error is assigned on the ruling of the court on the demurrer and on the motion for a new trial.

The only objection raised to the complaint is that the representations therein alleged to be fraudulent were not representations of existing facts.

The averments of the complaint covering this point are: That said Walker and Boyce represented to appellee that said insurance company was issuing a certain 1. policy to many persons, and would issue the same to the appellee for the consideration of $31.08 per year, which was the premium on said policy for $1,000 for one year for a person of appellee's age; that said policy would insure the appellee's life for $1,000, and would provide that, if appellee lived to pay premiums above stated on said policy for the term of twenty years, it would mature at the end of that time, and said company would pay appellee the amount of the face of the policy, and, in addition thereto, said policy would participate in the surplus earnings of said company, which, at the end of that time, would be $350, or thereabouts, and appellee could then surrender his policy and said company would pay him in cash said $1,000 and said $350, making a combined sum of $1,350; that said Walker and Boyce further represented to appellee that, by the terms of said policy, at the end of three years from its date, appellee could surrender said policy, and said company would pay nearly as much as it had received from him in premiums. It is then averred that all of said representations were false, and known by the appellants to be false when made; that said Walker and Boyce knew that said company would not issue such a policy to appellee, and that said representations were made with intent to defraud appellee, and to induce him to execute to them his note for $31.08, the amount of said premium.

These averments show that the representations were made with regard to existing facts. There is no promise to write a special policy for appellee, but there is the statement of the fact that the company which appellants represented

were issuing and would issue to appellee a particular kind of policy which contained certain provisions.

It is well settled that a statement of intention merely, or the expression of an opinion, cannot be a representation amounting to fraud. *Hartman* v. *International Bldg., etc., Assn.* (1901), 28 Ind. App. 65. But as is said in the case just cited: " 'That the fact, however, concerning which the statement is made is future does not of itself prevent the misrepresentation from being fraudulent. The statement of matter in the future, if affirmed as a fact, may amount to a fraudulent misrepresentation, as well as a statement of a fact as existing at present.' 2 Pomeroy, Eq. Jurisp. (2d ed.), §877. See, also, 2 Pomeroy, Eq. Jurisp. (2d ed.), §878 *et seq.*

"In the case at bar it is alleged that appellee falsely represented to appellant that if he would become a member of the association, contract the loan, and pay the dues, interest and premiums, the bond and mortgage would be paid and canceled by a specified number of payments. The statements made to appellant were not merely statements of what appellee had an intention of doing, nor were they simply the expression of an opinion that a certain specified number of monthly payments would satisfy the bond and mortgage, but the representation made was that of a fact, and, although it was of a matter in the future, having proved to be false, the rights of the injured party relying upon it are not different from those growing out of the misrepresentation of a present fact." The complaint is sufficient and the demurrer was properly overruled.

On the trial appellee was permitted to prove by other witnesses living in the neighborhood that appellants had made similar representations for a similar purpose, and, upon receiving an application and premium, delivered similar policies to said applicants as that delivered to appellee. This evidence was introduced over the objection of appellants, and it is earnestly insisted that the in-

troduction of such testimony was error. It is contended on the part of the appellee that this evidence was admissible for the purpose of showing the intent or guilty knowledge of appellants in making the representations; also, that it was admissible to prove the agency of said Walker and Boyce. On the other hand, it is contended by appellants that the intent is immaterial; that, if the misrepresentations are shown, fraud is imputed without regard to the intent with which they were made. And counsel cite some authorities which apparently sustain their position, but, in our opinion, when carefully considered, they may be distinguished. The apparent conflict of authorities is attributable to the difference in the character of the actions of the individual cases. This is an action in deceit for damages for fraud, and not an action for the rescission or cancelation of a contract. The action for deceit or fraud is based upon the evil intent—the intent to deceive. *Union Pac. R. Co.* v. *Barnes* (1894), 64 Fed. 80, 12 C. C. A. 48; *Lord* v. *Goddard* (1851), 13 How. (U. S.) 198, 14 L. Ed. 111; *Hutchinson* v. *First Nat. Bank, etc.* (1892), 133 Ind. 271, 36 Am. St. 537; *Lincoln* v. *Ragsdale* (1894), 9 Ind. App. 555; *Pittsburg, etc., Trust Co.* v. *Northern, etc., Ins. Co.* (1905), 140 Fed. 888, 78 C. C. A. 408; *Frenzel* v. *Miller* (1871), 37 Ind. 1, 10 Am. Rep. 62; *Kirkpatrick* v. *Reeves* (1889), 121 Ind. 280; *Furnas* v. *Friday* (1885), 102 Ind. 129; *Hardy* v. *Brier* (1883), 91 Ind. 91; *Oliver* v. *Hubbard* (1902), 29 Ind. App. 639.

In *Kimber* v. *Young* (1905), 137 Fed. 744, 70 C. C. A. 178, the rule, as established by all of the authorities that have given consideration to the subject, is stated as follows: "The basis of the action of deceit is the actual fraud of defendant—his moral delinquency; and therefore his knowledge of the falsity of the representation, or that which in law is equivalent thereto, must be averred and proved. There is much confusion in the authorities upon this subject, due in part to the erroneous assumption that that which is merely evidence of fraud is equivalent to

the ultimate fact which it tends to prove, and also to the assumption, likewise erroneous, that an untrue representation which would be sufficient to support a suit in equity for a rescission of a contract is equally as available in an action of deceit. In *Derry* v. *Peek* [1889], 14 App. Cas. 337, 356, a well-reasoned case, Lord Fitzgerald said: 'The action for deceit at common law is founded on fraud. It is essential to the action that moral fraud should be established, and since the case of *Evans* v. *Collins* [1844], 5 Q. B. *804, *820, in the exchequer chamber, it has never been doubted that fraud must concur with the false statement to maintain the action. It would not be sufficient to show that a false representation had been made. It must further be established that the defendant knew at the time of making it that the representation was untrue, or, to adopt the language of the learned editors of the Leading Cases, that "the defendant must be shown to have been actually and fraudulently cognizant of the falsehood of his representation, or to have made it fraudulently without belief that it was true."' In the same case Lord Herschell said: 'I think the authorities establish the following propositions: First, in order to sustain an action of deceit, there must be a proof of fraud, and nothing short of that will suffice. Secondly, fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false.' In *Lord* v. *Goddard* [1851], 13 How. (U. S.) 198, 211, 14 L. Ed. 111, it was said: 'The gist of the action is fraud in the defendants and damage to the plaintiff. Fraud means an intention to deceive. If there was not such intention; if the party honestly stated his opinion, believing at the time that he states the truth, he is not liable in this form of action, although the representation turned out to be entirely untrue. Since the decision in *Haycraft* v. *Creasy* [1801], 2 East 92, the question has been settled to this effect in England. The supreme court of New York held likewise in *Young* v. *Covell*

[1811], 8 Johns. *23, 5 Am. Dec. 316. That court declared to be well settled that this action could not be sustained without proving actual fraud in the defendant, or an intention to deceive the plaintiff by false representations. The simple fact of making representations which turn out not to be true, unconnected with a fraudulent design, is not sufficient. This decision was made forty years ago, and stands uncontradicted, so far as we know, in the American courts.' "

In *Frenzel* v. *Miller, supra,* the court quotes the following from *Taylor* v. *Ashton* (1843), 11 M. & W. 401: "We are of opinion, that independently of any contract between the parties, no one can be made responsible for a representation of this kind, unless it be fraudulently made. That is the doctrine laid down in *Pasley* v. *Freeman* [1789], 3 T. R. 51, where, for the first time, the cases on this subject were considered. In that case Mr. Justice Grose differed from the rest of the court, and thought the law gave no remedy for fraud, unless there was a contract between the parties. The court, however, held, that if a person told that which was untrue, and told it for a fraudulent purpose, and with the intention to induce another to do an act, and that act was done to the prejudice of the plaintiff, then an action for fraud would lie. That case was followed by *Haycraft* v. *Creasy* [1801], 2 East 92, and a great variety of other cases, and it must now be considered as established law. But then it was said, that, in order to constitute that fraud, it was not necessary to show that the defendants knew the fact they stated to be untrue; that it was enough that the fact was untrue, if they communicated that fact for a deceitful purpose; and to that proposition the court is prepared to assent. It is not necessary to show that the defendants knew the fact to be untrue. If they stated a fact which was true for a fraudulent purpose, they at the time not believing that fact to be true, in that case it would be both a legal and moral fraud."

And continuing, the following explanation is made of the conflicting authorities: ''The conflict in the decisions on this subject has been mainly produced by the nature of the action and the character of the court trying the cause. The courts of equity would afford relief by reforming or rescinding a contract founded upon a mutual mistake of fact upon a material matter, although the misrepresentation was innocently made by mistake, while the courts of law would afford no remedy, in the absence of a warranty, unless there was either positive or constructive fraud. This will explain the conflict in the two principal cases in this court. The case of *Zehner* v. *Kepler* [1861], 16 Ind. 290, was to recover damages for a false and fraudulent misrepresentation, while the case of *Woodruff* v. *Garner* [1866], 27 Ind. 4, 89 Am. Dec. 477, was a proceeding in equity to obtain a rescission of a contract.''

From the foregoing authorities, it will be seen that in actions for fraud for damages the intent with which the fraudulent acts were performed must be averred and 6. proved, and it will be found upon examination that the cases announcing a different doctrine are cases of an equitable nature, where the courts will afford relief upon the showing of a mere mutual mistake, and where actual fraud is entirely absent. And while the language of some of these cases is general, and apparently applies to all cases of fraud, yet such language must be held to apply only to cases of like character. The case of *Bischoff* v. *Coffelt* (1854), 6 Ind. 23, upon which appellants seem to rely, is of this class.

Intent, then, being a material issue in this case, brings it within the exceptions to the general rule, that independent and disconnected occurrences which do not bear directly upon the issues are irrelevant, and render evidence of such other like acts or representations admissible; it being well settled that such similar acts or representations go directly to the proof of the intent. *Continental Ins. Co.* v. *Insur-*

*ance Co., etc.* (1892), 1 U. S. App. 201, 51 Fed. 884, 2 C. C.. A. 535; *French* v. *White* (1856), 5 Duer (N. Y.) 254; *Moore* v. *Schrader* (1895), 14 Ind. App. 69; *Castle* v. *Bullard* (1859), 23 How. (U..S.) 172, 16 L. Ed. 424; 1 Elliott, Evidence, §§161, 162; *Huntingford* v. *Massey* (1859), I F. & F. 690; *Blake* v. *Albion Life Assur. Soc.* (1878), 4 C. P. D. 94.

Since, if a person makes false and misleading statements to one to induce him to part with his money, from a repetition of the same or similar false statements to another for a like purpose, it may well be inferred that they are the emanations of a deceitful heart or designing mind, or one with a reckless disregard for truth and fairness to others. Intent being a mental condition, as a rule it can only be shown by extrinsic matters.

In 1 Elliot, Evidence, §162, the learned authors so clearly lay down the reasons for the rule that we quote: ''The reasons for the admission of such evidence are in the main those stated by a learned editor with reference to evidence of mental states substantially as follows: To prove purpose, intent, motive, knowledge, or other mental state is a task of difficulty. A direct appeal to the judgment of Heaven, by ordeal, wager of battle, or the like was considered necessary by our ancestors to aid consciously feeble resources for the discovery of truth, when locked up in a human breast. But this is a mystery which modern jurisprudence by the use of reason undertakes to unravel. It demands, however, from the nature of the problem, a certain relaxation of the usual rules of evidence. Unless the person whose mental state is involved admits its existence, the fact of such mental state can be established only by proof of its natural manifestations, either in language or conduct. It follows, therefore, that in cases where a mental state is a fact in issue, the usual expressions of such state are competent. * * * It naturally follows that such proof will frequently be found in the doing of an act at another time

similar to the one as to which the issue is raised in the case on trial. That such proof would come within the scope of the rule against admitting *res inter alios acta,* does not affect the validity of the reasoning under which it is received." The evidence herein referred to was admissible.

Appellants object to the tenth instruction given by the court on its own motion. By this instruction the jury were told that they should find for the appellee if Walker and Boyce represented themselves to be agents of the insurance company, and, in the course of soliciting appellee for insurance, undertook to describe and explain to appellee the terms and conditions of the policy applied for, which was afterwards delivered, and if they represented to him that, by the terms of said policy, in case of his death within twenty years, the policy being in force, his beneficiary would receive the sum of $1,000, and in addition thereto an amount equal to all the premiums he had paid to the company at the time of his death, and if they concealed from him and failed to explain to him that in case of death, as aforesaid, from small-pox, he not having been successfully vaccinated, his beneficiaries would only be entitled to receive the amount of money paid to the company in premiums at the time of his death, which latter condition was in fact a part of said policy, and which representations appellee had a right to and did believe, and by which, together with the aforesaid concealments, appellee was deceived and injured.

It is earnestly insisted by appellants that mere concealment is not fraud, and that this instruction is erroneous. It is averred in the complaint and shown by the evidence that Boyce and Walker knew that appellee had not been vaccinated; that said Boyce and Walker undertook to explain, and did explain, the provisions of the policy appellee would receive upon his application, and stated that he would receive the payment as set out in the above instruc-

tion, but did not intimate to him that there were any exceptions to these provisions. In such case such concealment is fraud. *Frenzel* v. *Miller* (1871), 37 Ind. 1, 10 Am. Rep. 62; *Court* v. *Snyder* (1891), 2 Ind. App. 440, 50 Am. St. 247; *Shaeffer* v. *Sleade* (1844), 7 Blackf. 178.

Appellants undertook fully to explain and describe the provisions of the contract that appellee was buying. Having done this, taking into consideration the peculiar character of the contract and the ease in which an unskilled person might be misled with reference thereto, any concealment of any defect or matter that would depreciate the value of the contract became an act of fraud. Appellants might have been silent and have been safe, but, having been more than silent, having undertaken fully to describe the provisions of the contract, they were bound to give an honest exposition of the same, and, if they failed in this, they became liable for legal fraud. The instruction was not erroneous.

The giving of instruction twelve by the court on its own motion is also assigned as error. By this instruction the jury were told that in this action appellee was entitled to recover the amount of the note he had been compelled to pay, on account of the fraud of appellants, with six per cent interest, together with such other damages as were the proximate result of the fraud. It is urged against this instruction that this is not a proper measure of damages, but that the proper measure of damages is the amount appellee was compelled to pay on account of the contract. If this were an action for the rescission of a contract only, then appellant's contention would be correct; but, as we have shown, this is an action for fraud, and in such case "the damage to be recovered must always be the natural and proximate consequence of the act complained of." *Crater* v. *Binninger* (1869), 33 N. J. L. 513, 97 Am. Dec. 737; *Smith* v. *Bolles* (1889), 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279.

The court gave on its own motion instruction fifteen, which is as follows: "If you believe from this evidence that the defendants Walker and Boyce, or either of them, were the authorized agent or agents of the defendant Hart-. ford Life Insurance Company, and represented themselves to be such agents to the plaintiff, and that, in the course of the business of the company of soliciting the plaintiff for insurance and in the negotiation leading up to his taking out a policy, they wilfully, purposely, and wantonly deceived and defrauded the plaintiff to his injury, then and in that event you may, in addition to the actual damages sustained by the plaintiff, give exemplary damages against the Hartford Life Insurance Company and against the defendants Walker and Boyce, or either of them here found against, and whom you believe permitted the fraud in the manner and form aforesaid, such damages being given as punishment for the wrongful acts, and not exceeding, together with other damages, the amount demanded in the complaint."

Appellants assail this instruction on the grounds that, by §2352 Burns 1901, Acts 1883, p. 126, §1, in force at the time this transaction was had, such representations would be indictable; and that since appellants were subject to criminal prosecution they were not liable for punitive damages for such indictable acts. It is contended on the part of appellee: (1) That the acts of appellants were such false pretenses as were not indictable under the statute, being representations as to future acts; (2) that, since the appellant insurance company is a corporation, it is not subject to indictment for false pretenses. It is well settled that punitive or exemplary damages cannot be assessed where such acts constitute a criminal offense. *Borkenstein* v. *Schrack* (1903), 31 Ind. App. 220; *Koerner* v. *Oberly* (1877), 56 Ind. 284.

Appellants represented that the appellant insurance company had a certain contract to sell; that it contained certain

provisions; that if appellee would give his note for a certain amount this contract would be delivered to him. Such representations, if relating to a material matter and if false and relied upon, would constitute false pretenses under §2352, *supra*, and this being so, Walker and Boyce would not be liable for punitive damages in a civil action therefor, and said instruction was erroneous. It is true that appellant insurance company could not be prosecuted for false pretenses, but the instruction was not limited to the insurance company. And whatever damages the company was liable for was through its agents Walker and Boyce, and therefore its liability could not be greater than that of its agents. *Indiana, etc., Torpedo Co.* v. *Lippincott Glass Co.* (1905), 165 Ind. 361. The verdict of the jury was for $282.32, $250 of which, as shown by the verdict, was for damages generally, and $32.32 for the note and interest appellee had been compelled to pay. As there was no evidence whatever of any damages that appellee had sustained, except the payment of said note, it is apparent that $250 of the amount was exemplary damages. It is evident, therefore, that the instruction was not harmless.

There are other questions presented, but under our view of the case they are immaterial, and need not be considered.

There is uncontradicted evidence that appellee suffered damage to the amount of $32.32, the amount of the note he was compelled to pay. There is no evidence of any other damage. It is therefore apparent that, under our view of the case, the judgment should have been for the above amount, and that it is excessive to the amount of $250. With this situation clearly before us, we are of the opinion that justice will be fully met if appellee remits said sum of $250.

It is therefore ordered that, if appellee remits $250 of said judgment within thirty days, the judgment will then be affirmed. If such remittitur is not made within such time, the judgment will then be reversed.

## ON MOTION TO RETAX COSTS.

HADLEY, J.—In this cause the order of the court was that, if appellee entered a remittitur within thirty days, the cause should be affirmed. Appellee duly entered such remittitur. The costs of the appeal were taxed to the appellee. Appellee now makes a motion to retax the costs, and contends that they should be taxed to appellants. As a general rule, where a cause is affirmed on a remittitur, the costs of the appeal are taxed to the appellee. Ewbank's Manual, §§251, 270; *Cummings* v. *Girton* (1898), 19 Ind. App. 248, 252. But this is not a hard and fast rule, that may not be varied as justice may require. §676 Burns 1901, §664 R. S. 1881. The record shows, and the jury found, that the company grossly misrepresented the contents of its policy; that it took appellee's note, payable in bank, for the premium before the policy was issued; that it discounted it in bank either before the policy was issued or after it had been notified by appellee, immediately upon receipt of the policy, in plain terms, that he repudiated the whole contract, for the reasons, specifically stated, that the same did not contain the provisions agreed upon, and that he would not accept the policy and demanded the return of his note. Appellants refused to return the note, or the amount of the same, and appellee was compelled to pay it. This shows such an utter disregard for its obligations and the rights of others as to make this litigation necessary. For these reasons, and from the equity of the case as appears from the whole record, it is our opinion that justice requires that appellants pay the costs of this appeal. The clerk is therefore directed to tax the costs of the appeal to appellants.