Paul D. JOHNSON, Appellant
(Respondent below),

v.

Loretta J. JOHNSON, Appellee
(Petitioner below).

No. 1–978A257.

Court of Appeals of Indiana,
First District.

May 21, 1979.

Darrell E. Felling, Felling, Crawford &
Wagner, Terre Haute, for appellant.

Myrl O. Wilkinson, Patrick, Gabbert, Wilkinson, Goeller & Modesitt, Terre Haute,
for appellee.

ROBERTSON, Judge.

The marriage of Loretta J. Johnson (Loretta) and Paul D. Johnson (Paul) was dissolved on April 3, 1978. Paul appeals the trial court's division of property and award

of attorney fees, alleging such decisions to have been an abuse of discretion. The trial court entered the following judgment:

It appears to the Court that Paul D. Johnson, Jr., Husband, was served with summons by personal service on the 15th day of April, 1977, and more than sixty (60) days has elapsed since the filing of this case.

The Court having had this cause under advisement, and now having considered the exhibits and examined the written contentions of the parties, finds that there has been an irretrievable breakdown of the marriage of the parties, and that the marriage of Loretta J. Johnson and Paul D. Johnson, Jr. should be dissolved. Court further finds that the property, both real and personal of the marriage estate should be set over to each of the parties as follows:

1. Paul D. Johnson, Jr. should be the owner of the real estate located at 62 Allendale, Terre Haute, Vigo County, Indiana, subject to the mortgage debt, and the owner of the household goods and furnishing therein. Paul D. Johnson, Jr. should be the owner of the medical office equipment and medical instruments presently in his possession, the owner of two (2) 1977 Trans Am automobiles, and a 1977 Toyota pick-up truck. Paul D. Johnson, Jr. should be the owner of a 1973 Cessna 310 airplane. Paul D. Johnson, Jr. should be the owner of Seventy-five Thousand Dollars ($75,000.00) worth of the Associates First Capital ten (10) year notes.

Loretta J. Johnson should be declared the owner of the real estate located at 3101 Poplar Street, Terre Haute, Vigo County, Indiana, and the real estate located at 7932 The Mews, Terre Haute, Vigo County, Indiana, subject to the mortgage debt. Loretta J. Johnson should be the owner of the household goods and furnishings presently in her possession. Loretta J. Johnson should be the owner of the corporate stocks, to-wit:

American Motors—500 shares, General Foods—500 Shares, General Electric—200 shares, Redman—1000 shares, Crown Cork—500 shares, McCullock Oil—2153 shares, Skyline—1000 shares, Bellanca Aircraft—5000 shares, Kresges—900 shares, Pfizer—100 shares, Pillsbury—200 shares, Kroger—100 shares and Pfizer—20 shares; and the owner of Seventy-five Thousand Dollars ($75,000.00) worth of the Associates First Capital ten (10) year notes. Loretta J. Johnson should be the owner of a 1976 Grand Prix automobile and a 1975 Maverick automobile. Loretta J. Johnson should recover of Paul D. Johnson, Jr. the sum of Forty Thousand Dollars ($40,000.00). Further, Paul D. Johnson should pay Loretta J. Johnson's attorney fee in the amount of Fifteen Thousand Dollars ($15,000.00). Loretta J. Johnson should pay the costs of this action.

Loretta and Paul met while both were in college; Paul as a medical intern and Loretta as a nursing student. Upon graduation and marriage, Paul began his medical practice with Loretta as his sole employee, but without compensation. This continued for two and a half years whereupon the Johnsons left Terre Haute so that Dr. Johnson could pursue additional studies. Upon their return to Terre Haute, Loretta again became Paul's nurse, bookkeeper, and receptionist. However, as a result of her husband's refusal to hire additional help, Loretta discontinued working at her husband's office. After thirteen years of marriage, Loretta and Paul adopted four children[1] within a period of two years. Loretta had complete responsibility for the caring of the children and, therefore, was not employed.

Between 1961–1965, Loretta invested in various stocks which Paul sold during 1967–1969 for a profit of approximately $80,000.00. Loretta taught Paul how to read the stock market tables after which only he was "allowed" to invest in the market. All stock purchased by Paul was in his name only.

1. The status of the children at the time of the dissolution proceedings is as follows: Vicki, 23, married and living in Delaware; Fred, 19, member of the Marine Corps; Tami, 18, living with her mother; and Don, 16, married and living with his father.

Paul and Loretta enjoyed a joint checking account until 1974, at which point Loretta's privileges were withdrawn. Thereafter, Paul would provide her with a weekly sum of money.

However, in September, 1976, Loretta began employment as a nurse at a local hospital. Her gross earnings for the first eleven months of 1977 were $9,169.45. Paul's gross income for the six years of 1971–1976 was as follows: 1971—$166,206.00; 1972—$156,538.80; 1973—$152,780.93; 1974—$159,548.00; 1975—$184,757.00; 1976—$198,304.00. Gross earnings for the eleven months of 1977 were $192,000.00. When it appeared that a reconciliation was impossible, Loretta petitioned for dissolution of the marriage in April, 1977.

The assets of the parties and the values of each are as follows:

| | Value per wife | Value per husband |
|---|---|---|
| Allendale real estate | $100,000.00 | $ 72,500.00 |
| —equity in Allendale | −16,225.00 | −16,225.00 |
| | 83,775.00 | 56,275.00 |
| Poplar real estate | 51,000.00 | 51,000.00 |
| Airplane | 100,000.00 | 49,750.00 |
| Stocks | 108,599.00 | 103,565.39 |
| Notes | 150,000.00 | 150,000.00 |
| Office Equipment | 8,000.00 | 3,000.00 |
| Furniture[2] | 31,500.00 | −0− |
| Automobiles[3] | — | — |
| TOTAL: | $532,874.00 | $413,590.39 |

Because of the conflicting opinion between Loretta and Paul regarding the values placed on their property, and because the trial court's judgment does not evince which values it may have adopted, we are not able to determine an exact dollar amount for each party. However, we are able to use these values in rendering a maximum and minimum amount as to the value of the property awarded to each.

2. The only evidence regarding the value of the furniture and household items was based on Loretta's opinion. Paul failed to present rebuttal. Loretta estimated that she had $1,500. worth of these items in her possession.

3. Any values placed on automobiles were presented by Loretta based upon "Red Book" values. However, some of these vehicles were sold and replaced with newer and different

Therefore, the value of the property awarded to Loretta would range between $269,-565.39 and $276,099.00. The property awarded to Paul would range between $184,025.00 and $296,775.00.

Indiana prescribes by statute the method by which the court shall divide the property of the parties upon a dissolution of their marriage:

In an action pursuant to section 3(a) [subsection (a) of 31–1–11.5–3], the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one [1] of the spouses and requiring either to pay such sum as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale.

In determining what is just and reasonable the court shall consider the following factors:

(a) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker.

(b) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(c) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children.

models. It appears from the judgment that the trial court attempted to divide them equally. Moreover, we recognize the right of the trial court to consider its own knowledge as to the value of certain property. *Cross v. Cross,* (1974) 159 Ind.App. 592 at 596, 308 N.E.2d 717 at 719; *Jackman v. Jackman,* (1973) 156 Ind. App. 27 at 33, 294 N.E.2d 620 at 623.

(d) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(e) *the earnings or earning ability of the parties* as related to a final division of property and final determination of the property rights of the parties. [Our emphasis.]

Ind.Code 31–1–11.5–11 (Supp.1978).

■ When this court is confronted with issues of property settlement and award of attorney fees, we are not at liberty to weigh the evidence. *In re Marriage of Lewis,* (1977) Ind.App., 360 N.E.2d 855.

■ The trial court has broad discretionary power in determining property disposition, *In re Marriage of Hirsch,* (1979) Ind. App., 385 N.E.2d 193, and is merely required to divide the property "in a just and reasonable manner." Ind.Code 31–1–11.5–11, *supra.* Therefore, the trial court is not required to divide the property equally between the parties. *In re Marriage of Dougherty,* (1978) Ind.App., 371 N.E.2d 1328; *In re Marriage of Osborne,* (1977) Ind.App., 369 N.E.2d 653.

■ The decision of a trial court relative to property rights is reviewable for a determination of abuse of judicial discretion, and for that purpose only. *Geberin v. Geberin,* (1977) Ind.App., 360 N.E.2d 41. The profundity of this principle was reiterated in *Boshonig v. Boshonig,* (1971) 148 Ind.App. 496, 267 N.E.2d 555:

The judicial discretion in a case of this nature is an exercise of official conscience, not arbitrarily, willfully, or passionately exercised, but based upon the facts and circumstances of the particular case with regard to what is right and equitable under the applicable law and to the end of a just result.

148 Ind.App. at 499, 267 N.E.2d at 556.

■ In the instant case, considering the age and circumstances of the parties, their respective earnings and earning abilities, and the economic circumstances of the parties at the time of disposition of the property, we cannot say that the court's decision was clearly against the logic and effect of the evidence. There was no abuse of discretion.

The second allegation of error pertains to the assessment of Loretta's attorney's fees against Paul in the amount of $15,000.00. Paul contends that since her attorney expended only 55 hours in case preparation that $15,000.00 is clearly excessive.

■■ In deciding whether the award of attorney fees is excessive, this court must determine whether the trial court abused its discretion. Therefore, a reversal is proper only where the result "is clearly against the logic and effect of the facts and circumstances before the court . . . ." *Libunao v. Libunao,* (1979) Ind.App., 388 N.E.2d 574 *Greiner v. Greiner,* (1979) Ind.App., 384 N.E.2d 1055; *Lovko v. Lovko,* (1978) Ind. App., 384 N.E.2d 166; *Farthing v. Farthing,* (1978) Ind.App., 382 N.E.2d 941. The fact that the same circumstances might justify a different outcome does not permit the substitution of this court's judgment for that of the trial court. *Greiner, supra.*

■ Although an hourly rate is a factor to be considered in assessing attorney fees, it is not the sole factor. Traditionally, the size of the marital estate, the length of time necessary to obtain the desired result, and the possibility of appeal are other aspects to be weighed. *Burkhart v. Burkhart,* (1976) Ind.App., 349 N.E.2d 707. Moreover, the trial court was intimately familiar with the parties' financial situations. *Johnson v. Johnson,* (1977) Ind.App., 367 N.E.2d 1147.

Considering all of these factors, the award does not appear to be excessive. No abuse of discretion has been shown.

Affirmed.

LOWDERMILK, P. J., and LYBROOK, J., concur.