In re the MARRIAGE OF John GRAY, Appellant (Respondent Below),

and

June M. Gray, Appellee (Petitioner Below).

No. 3-880A236.

Court of Appeals of Indiana, Third District.

June 30, 1981.

Rehearing Denied August 14, 1981.

Arnold Krevitz, Martin H. Kinney, Merrillville, for appellant.

Max Cohen, Dawn Wellman, Cohen & Thiros, Merrillville, for appellee.

STATON, Judge.

The trial court entered a dissolution decree which dissolved the marriage of June M. Gray and John S. Gray. Later, the trial court heard evidence for twelve days before entering its decree which divided and settled the marital estate. John S. Gray brings this appeal for our review of the division of the marital estate, the award of expert witness fees, and the award of attorney fees. On appeal, he contends that the trial court abused its discretion in dividing the marital estate and awarding fees.

In her brief, June M. Gray raises the additional issue of whether damages up to the amount of ten per cent of the judgment should be assessed against John for his "undertaking a specious appeal."

We affirm the judgment of the trial court except as to Finding 18. We reverse as to Finding 18 and remand for a statement by the trial court as to the basis for its Finding, since there is nothing in the

record to indicate whether the trial court took judicial notice of certain additional factors in arriving at the final witness fee.

Since the judgment of the trial court is, at least in part, reversed and remanded, no damages will be assessed against John S. Gray for his taking of the appeal.

## I.

### Property Division

John argues that the trial court abused its discretion in its division of the marital property because it was not made in a just or reasonable manner.[1] He also contends that the judgment was excessive and that the findings are not supported by the evidence.

The disposition of the marriage property is within the sound discretion of the trial court. *Morgan v. Cooper* (1981), Ind.App., 415 N.E.2d 729. The trial court's division of the property may be reversed only upon a showing of an abuse of the trial court's discretion. *Id.* To constitute an abuse of discretion, John must show that the trial court's decision was one which was "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, 812.

We will not reweigh the evidence; we will consider only that evidence and all the reasonable inferences drawn therefrom which is most favorable to the appellee, June Gray. *Morgan, supra.* Even though the evidence might support a conclusion different from the one reached by the trial court, we cannot substitute our judgment for that of the trial court. *Id.*

John is the sole stockholder of Jack Gray Transport, Inc. (the Corporation). Evidence was presented concerning the increase in value of the Corporation during the Grays' marriage. John challenges the following findings of fact which the trial court made regarding the value of the Corporation:

"13. As of the end of the calendar year 1967, the Jack Gray Transport, Inc. had a value of approximately $250,000.00.

"14. That the value of the respondent's business, as of the end of 1967 is based primarily upon the value of the operating authorities and permits of the debtor corporation of which the respondent was the 100% owner.

"15. The asset value of Jack Gray Transport, Inc. as of the end of 1976 was $1,894,684.00. That said valuation is predicated upon the valuation of $250,-000.00 to the operating authorities and permits.

"16. The value of the authorities and operating permits of Jack Gray Transport, Inc., based upon a formula commonly used in the industry as of December 31, 1976 is $2,037,124.00.

"17. The value of the respondent's business, Jack Gray Transport, Inc. as of the end of 1976, the Court now finds to be approximately $3,650,000.00. That this valuation does not take into account the value, if any, of respondent's close relationship with Old Dutch Sand Company and Lakes & Rivers Transport Company, Inc."

The evidence most favorable to the judgment reveals that Findings 15, 16 and 17 are supported by sufficient evidence.

---

1. IC (1971), 31–1–11.5–11 listed the factors that shall be considered in determining what is a just and reasonable division of the marital property. They are:

"(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

"(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

"(3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

"(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property;

"(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

*Finding No. 15.* Robert Moise, C.P.A., testified that he used several methods to value the Corporation. These methods are set forth by the Internal Revenue Service and the Handbook for Accountants. Through lengthy testimony, Moise established all of the factors he considered in using what is known as the earnings approach method and the underlying asset value or asset valuation method. He testified that under the earnings approach the asset value of the Corporation in 1976 was $1,950.00. Under the asset valuation method, he stated the asset value of the Corporation was $1,894,684 assuming the trucking authorities and permits of the Corporation were worth only $250,000.

John argues that: Moise used immaterial information to make his valuation; Moise made comparisons with other companies which were not valid because the companies were not similar to the Corporation; and, Moise included assets that should not have been included as assets of the Corporation. Therefore, the only credible testimony as to the value of the Corporation was given by David Hartman, C.P.A.

All the matters argued by John were considered by the finder of fact when he discounted Hartman's valuations and one of Moise's two valuations. We will not now choose one expert's value of the Corporation over another's value; we do not reweigh the evidence. *Morgan, supra.*

■ John argues that part of the evidence considered by the trial court was inadmissible because any evidence concerning the Corporation after the decree of dissolution of marriage was entered was not relevant. We disagree.

■ The general standard regarding the relevancy of evidence is whether the evidence has the logical tendency to prove a material fact. *Indiana National Corp. v. Faco, Inc.* (1980), Ind.App., 400 N.E.2d 202. The evidence admitted concerning the Corporation after 1976 was used to arrive at

the value of the Corporation in 1976. Moise testified that he attempted to remove all property items from a 1977 report that had no bearing on the 1976 valuation. He also stated that in analyzing the earnings capacity of a company, accountants look at the future earnings of the company when determining the present value. He stated 1977 earnings would either be projected or, in this case, he could use the actual figures for that year. The trial court stated that it would admit into evidence the 1976 information in order to help determine the 1976 value of the Corporation, but it would not include 1977 assets within the marital property. The trial court did not err in admitting evidence of facts after 1976 to help it ascertain the value of the Corporation in 1976.

■ John argues that June's Exhibits 2 and 2A were inadmissible because they contained hearsay evidence.[2] This alleged error was not contained in the motion to correct errors and is therefore waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

■ He also argues that as a result of the admission of these exhibits, highly prejudicial matters were presented to the court. He does not set forth these matters in his brief as he is required to do nor does he give page citations to the record. AR. 8.3(A)(7). He has not demonstrated how he was prejudiced. Without some prejudice, a reversible error does not exist. *Winker v. State* (1977), Ind.App., 367 N.E.2d 26.

■ He also cites *Bradley v. Phelps* (1970), 147 Ind.App. 349, 260 N.E.2d 894, for the proposition that the exhibits 2 and 2A are not admissible evidence, since they were prepared specifically for trial and not in the ordinary course of business. *Bradley* also states that when the evidence is merely cumulative, a new trial should not be granted. Everything in the exhibits was either admitted as another exhibit or was testified to orally by Moise. John was not prejudiced by the admission of exhibits 2 and 2A.

2. He also argued that they were inadmissible because they contained information about the Corporation after 1976. The fallacy of this argument was pointed out in the preceding paragraphs. We shall not repeat it here.

*Finding No. 16.* Donald Smith is an attorney who practices primarily before the Interstate Commerce Commission and the Public Service Commission of Indiana. He represents various truck companies in regulatory matters and related matters. He has rendered opinions as to the value of trucking authorities in the course of negotiations for their acquisition or sale. Smith detailed the method he followed and the information upon which he relied when he valued the authorities at $2,037,124. The trial court heard Smith's testimony and it heard John's expert witness, Carl Steiner. The finder of fact decides which method of valuation was correct and the true value of the authorities. We will not reweigh the evidence. *Morgan, supra.*

*Finding No. 17.* John argues that since Findings No. 15 and No. 16 were wrong, Finding No. 17, which combines the values of Findings Nos. 15 and 16, must also be wrong. He again argues that his expert witness's testimony should be believed instead of the expert witness's testimony the finder of fact chose. Since Findings No. 15 and No. 16 were not incorrect and we will not reweigh the evidence, Finding No. 17 must stand.

*Findings Nos. 13 and 14.* John argues that the $250,000 value assigned to the Corporation in 1967 is not supported by the evidence. He argues that his expert's valuation of approximately $600,000 should be used. Assuming *arguendo* that he is correct, the question then becomes whether the alleged error is reversible error.

▮ For the trial court's alleged error to be an error requiring reversal, the decrease in the total marital property [3] available for distribution must be such that the trial court's award of $600,000 is an unjust and unreasonable division of the marital proper-

ty. A $600,000 award out of $3,050,000 is equivalent to awarding June approximately twenty percent of the marital property. We can not conclude that this award to June was an unjust and unreasonable division of the marital assets.

In determining that an award to June of twenty percent of the marital property is a just and reasonable division of the marital property, we must consider John's arguments that Findings Nos. 9 and 10 are incorrect. These findings state the following:

"9. Throughout the marriage of the parties, petitioner was employed and used the income from her employment to maintain the household and to support her children by a previous marriage.

"10. Throughout the marriage the petitioner, whenever requested by the respondent, entertained the business associates of the respondent and accompanied him on business trips. That the petitioner, throughout the marriage, maintained a suitable and adequate home for the parties."

John seems to argue that the findings are not supported by sufficient evidence. He argues that the trial court ignored certain testimony and made incorrect inferences from other testimony.

The evidence most favorable to the judgment reveals that June paid for the gasoline for her car and the clothes she bought for herself. She paid for new carpet for their home and for a new garage. She put money that she received into their joint bank account and would use it to buy items for the household. She replaced this money with money she earned at her job. She and her previous husband supported her children from her previous marriage. Although she did receive $40 a week from

---

3. The increase in value of the Corporation from 1967 to 1976 was included in the marital assets. The trial court figured the value of the Corporation as follows:

|  |  |
|---|---|
| 1976 value | $ 3,650,000 |
| 1967 value | $ 250,000 |
| Increase in value | $ 3,400,000 |

Assuming *arguendo* that the 1967 value should be $600,000, the increase in the value of the Corporation would have been as follows:

|  |  |
|---|---|
| 1976 value | $ 3,650,000 |
| 1967 value | $ 600,000 |
| Increase in value | $ 3,050,000 |

The marital property would increase by $350,-000 ($3,400,000 − $3,500,000 = $350,000).

John as grocery money and he did pay the utility bills, the evidence is sufficient to support the trial court's Finding No. 9.

The evidence most favorable to the judgment is also sufficient to support Finding No. 10. June testified that she was continuously going to dinners and with groups to different places for her husband's business purposes. John stated that they had entertained out quite often.

John argues that the implication of the finding that June contributed to the maintenance and development of the Corporation's business is incorrect and should not have been made by the trial court. He cites a portion of her testimony in which she states that she did not take part in John's business activities. We may not ignore, as John has, June's clarification of that testimony. She later testified that the only part of his business with which she was involved was the social part. John's testimony is also replete with examples of the importance he placed upon socializing with clients and their employees. He testified that he took clients on trips and to dinner. He tried to regularly play sports with clients. He bought $787.50 worth of Christmas gifts for the secretaries of one client. He stated that he thought this was a cost of doing business. June was involved with much of the socializing. The trial court could reasonably infer that her presence at some of the many social events John believed necessary for business was of some value to the Corporation.

One of the factors of IC 31–1–11.5–11 that a trial court considers is the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker. June contributed to the increase in the value of the Corporation by helping to entertain clients and by being a homemaker for John. The trial court assigned the value of her services as being approximately twenty percent of the increase of the value of the Corporation. We

will not substitute our judgment for that of the trial court. *Morgan, supra.* The trial court did not abuse its discretion, since its decision was not "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Marshall, supra,* at 812.

■ John argues that the trial court did not properly consider the extent to which the property was acquired by each spouse prior to the marriage or through inheritance. He further argues:

"The court's failure to state in its Findings of Fact that Wife's award was based upon the increase of the Husband's net worth during the marriage indicates that the trial court completely and improperly failed to consider factor (b) in its deliberations."

■ We must decline John's invitation to presume that the trial court's judgment is incorrect. This Court presumes the judgment is correct and will indulge in all reasonable presumptions in upholding the judgment of the trial court. *Indiana Broadcasting Corp. v. Star Stations of Ind.* (1979), Ind.App., 388 N.E.2d 568, 573. John has the burden of establishing error. We are convinced by the following that he has not established error.

The trial court stated in Finding No. 6 that June owned the house when the parties were married, and she kept the house after the dissolution. June also brought a used car into the marriage and was awarded a used car in the dissolution decree. John was the sole stockholder of the Corporation when the parties married and the court awarded him all of the stock of the Corporation in the decree. While the parties were married, the value of the Corporation did increase. John did have to share a portion of the increase in value with June, but there is no evidence that John had to share the value of the Corporation that he brought into the marriage.[4]

4. John makes short arguments that the trial court did not correctly apply the facts to the last three factors of IC 31–1–11.5–11 so that the $600,000 award is incorrect. The trial court did not make findings of fact that were advantageous to June concerning these three factors. We therefore conclude that the trial court did not increase its award to June above

## II.

### Witness's Fees

The trial court made the following Finding of Fact:

"18. The Court further finds that it was necessary for petitioner's counsel to employ Robert N. Moise, a Certified Public Accountant and expert witness, in the preparation and trial of this cause. That the reasonable value of his services is $11,600.00."

John argues that there is not sufficient evidence in the record to support this finding. He argues that the only evidence in the record concerning the value of Moise's services was Moise's testimony stating, just before June rested her case-in-chief, that his fee for services rendered was $7,801. June argues that the $7,801 figure did not include the time Moise assisted her counsel in understanding John's expert witnesses' testimony and in preparing cross-examination questions. She argues that Moise actively participated as a consultant for the 48 hours of trial that followed his previous testimony. She further argues that the trial court must have taken judicial notice of this additional time and applied Moise's rate per hour of $90 for the additional fees of $3,799.[5]

■ The allowable scope of judicial notice varies according to the function that the judge is performing. *Belcher v. Buesking* (1978), Ind.App., 371 N.E.2d 417, 420. The trial court is allowed a wider latitude in its role as a fact finder discerning adjudicative facts. *Id.*

In the instant case, Moise had detailed the services that he had performed and was continuing to perform. He had testified as to his hourly billing rate and had stated the total amount due just before June rested her case-in-chief. The trial court was able to observe Moise in the courtroom during John's case-in-chief. It was able to observe any conversations or notes between Moise

and June's counsel and the amount of time that Moise was in the courtroom.

■ The trial court did not have to close its eyes to what took place in the courtroom; it could have taken judicial notice of the above facts. However, it may not take judicial notice without disclosure at trial and without an opportunity to object. *Id.* There is no statement in the record by the trial court that it did take judicial notice of these facts. We can add nothing to the special finding of fact by presumption or inference. *Malbin and Bullock, Inc. v. Hilton* (1979), Ind.App., 387 N.E.2d 1332, 1334. We therefore remand this issue to the trial court with instructions to state the basis for its Finding No. 18.

## III.

### Attorney's Fees

■ John argues that the trial court abused its discretion in awarding $110,000 attorney's fees to June's attorney because the award is not supported by sufficient evidence and is contrary to the evidence.

IC (1973), 31–1–11.5–16 states as follows:

"Costs.—Attorney's fees.—The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name. [IC 31–1–11.5–16, as added by Acts 1973, P.L. 297, § 1.]"

■ This statute allows the trial court to exercise broad discretion in determining the amount one party may be required to pay for the other party's attorney's fees. *In re Marriage of Hirsch* (1979),

---

what it would have otherwise been without considering these factors.

5. If the trial court had awarded additional fees at the rate of $90 per hour for 48 hours, the

additional fees awarded would total $4,370. Only $3,799 was added to the $7,801 figure to which Moise had testified.

Ind.App., 385 N.E.2d 193, 197. We will disturb an award of attorney's fees only when a party demonstrates a clear abuse of discretion, *Id.*; therefore, we will reverse the trial court only when its award is clearly against the logic and effect of the facts and circumstances before the court. *Johnson v. Johnson* (1979), Ind.App., 389 N.E.2d 719, 722. This Court is not permitted to substitute its judgment for that of the trial court merely because the same circumstances might justify a different outcome. *Id.*

When a trial court determines reasonable attorney's fees for a dissolution action, it usually considers the size of the marital estate,[6] the length of time necessary to obtain the desired result, an hourly rate of compensation, and the possibility of an appeal. *Id.* at 722. The facts most favorable to the judgment reveal the following: the value of the marital estate exceeded $3,050,000; senior counsel had worked over 244 hours on the case and an associate counsel had worked over 147 hours on the case.[7]

An expert witness testified that he would value the legal services at $101,500. He based his calculations on 300 hours at $125 per hour (for senior counsel), 200 hours at $60 per hour (for associate counsel), and $52,000 for the size of the marital estate. He testified these fees were justified due to the complexity of the case and the possibility of appeal. John, while acknowledging that this Court will not reweigh the evidence, persists in presenting evidence from his experts as to the amount of attorney's fees that should be awarded. We will not follow his suggestion to split the difference between the expert's opinions and substitute our judgment for the judgment of the trial court.

John also argues that it was an abuse of the trial court's discretion to award June

attorney's fees $9,000 above the estimate of June's expert witness. We disagree.

■■■■ The fact finder is not bound by an expert's testimony simply because the person testifies as an expert. *City of South Bend v. Users of Sewage Disposal Facilities of Clay Utilities, Inc.* (1980), Ind.App., 402 N.E.2d 1267, 1275. The trial court may take judicial notice of what a reasonable attorney's fee would be, even absent any evidence in the record, because the trial court is familiar with the action and the amount of work which would be required. *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41, 47.

■■■■ Usually the trial court may not take judicial notice without disclosure at trial and an opportunity to object. *Belcher, supra.* In this case, such a procedure would have been superfluous. The trial court is required to disclose that it shall take judicial notice and provide the parties an opportunity to object so that a party may dispute the matters judicially noticed by evidence if he believes the matters can be disputed. *Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio* (1937), 301 U.S. 292, 302, 57 S.Ct. 724, 729, 81 L.Ed. 1093. John's experts had testified as to the amount of attorney's fees that should be awarded. John had therefore already disputed the matters the trial court judicially noticed.

The trial court's award of attorney's fees is not clearly against the logic and effect of the facts and circumstances before the court merely because it is higher than one expert's estimate. We conclude that the trial court did not abuse its discretion.

## IV.

### Appeal Damages

■■■■ June argues John undertook a specious appeal. She argues that damages

---

6. John argues that using the size of the marital estate as one of the factors in awarding attorney's fees violates the spirit of *Barelli v. Levin* (1969), 144 Ind.App. 576, 247 N.E.2d 847. *Barelli* concerned champertous contingent fee contracts. We fail to see how the present use of the size of the marital estate relates to champertous contingent fee contracts which base

the attorney's compensation on the property settlement.

7. These figures were given approximately half way through the trial. They do not include the time expended to complete the trial and to prepare proposed findings of fact and conclusions of law.

should be assessed under AR. 15(G) which states:

"(G) Damages Against Appellant. If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution."

Since we have reversed and remanded as to Finding 18, damages would be inappropriate.

Affirmed in part, reversed and remanded in part with instructions to state what additional factors it took judicial notice of in awarding Robert N. Moise's witness fee.

HOFFMAN, P. J., concurs.

GARRARD, J., concurs in part and dissents in part with opinion.

GARRARD, Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion that the husband has failed to demonstrate reversible error in the division of property.

I also agree that the fees awarded for the services of Robert Moise are in excess of any testimony adduced at trial. I would vacate that portion of the decree and remand for further proceedings.

I find the same defect in the award of attorneys' fees. The parties introduced evidence of the reasonable value of counsel's services. The award entered by the court was approximately $9000 more than the highest valuation testified to.

Applying the reasoning of *U. S. Aircraft Financing, Inc. v. Jankovich* (1980), Ind. App., 407 N.E.2d 287, this was extensive and complicated litigation so as to preclude the court from setting the amount of attorney fees on the basis of judicial knowledge. *See also Sears, Roebuck & Co. v. State* (1967), 248 Ind. 169, 225 N.E.2d 175, 183.

As the award exceeded the highest figure presented by the evidence, it is not sustained by the evidence and is excessive. *Hartford Life Ins. Co. v. Hope* (1907), 40

Ind.App. 354, 81 N.E. 595; *cf. Indianapolis Chair Mfg. Co. v. Swift* (1892), 132 Ind. 197, 31 N.E. 800; *Western & Southern Indemnity Co. v. Newman* (1937), 103 Ind.App. 544, 7 N.E.2d 64.

I would, therefore, also vacate and remand the portion of the decree awarding attorneys' fees.