Phyllis Cooper MORGAN, Appellant
(Defendant Below),

v.

Charles COOPER, Appellee
(Petitioner Below).

No. 3–880A230.

Court of Appeals of Indiana,
Third District.

Jan. 28, 1981.

Thomas M. Carusillo, Elkhart, for apppellant.

W. L. McLaughlin, Simpson & McLaughlin, Goshen, for appellee.

STATON, Judge.

This civil action concerns the dissolution of the marriage of Phyllis Cooper Morgan (Morgan) and Charles Cooper (Cooper). A decree of dissolution of marriage was entered which provided for the distribution of the assets of the parties, the payment of attorney fees, and the restoration of the wife's former name. The trial court amended the distribution of assets two times after the original decree.

The essence [1] of the issues Ms. Morgan raises on appeal are as follows:

(1) Did the trial court err when it amended its order twice after its original decree?

(2) Did the trial court err in not providing the parties an opportunity to be

---

1. We have consolidated the issues in order to clarify Ms. Morgan's argument.

heard before it amended its order on its own motion?

(3) Did the trial court abuse its discretion when it did not give Ms. Morgan special consideration in dividing the marital property?

We affirm.

## I.

### Amendments of Judgment

The original decree of the dissolution of marriage and order of the division of property was entered on December 27, 1979. On January 4, 1980, counsel for Mr. Cooper sent the judge[2] and Ms. Morgan's attorney a letter which noted that the original order had failed to distribute all of the assets of the parties. On February 25, 1980, Cooper's attorney filed his motion to correct errors. On March 6, 1980, the judge[3] amended his original order.

On March 10, 1980, Cooper's attorney sent another letter to both the judge and Morgan's attorney. The attorney suggested that the judge had made an arithmetic error if he had intended to equally divide the parties' assets. The judge amended his order again on March 12, 1980.

Ms. Morgan filed her Motion to Correct Errors on April 11, 1980. Cooper filed a Statement in Opposition to her Motion to Correct Errors. On May 16, 1980, the court held a hearing on the Motion to Correct Errors, the Statement in Opposition to it, and any arguments and other matters that could have been presented at a hearing on Cooper's original motion to correct errors.

On appeal,[4] Ms. Morgan argues that Ind. Rules of Procedure, Trial Rule 59 requires the trial court to make a statement of the facts and grounds upon which the errors it corrects are based. She contends that the party aggrieved by the court's granting of the Motion to Correct Errors would not otherwise be able to formulate his appeal and that this Court would not be able to pass upon the propriety of the trial court's action. We disagree.

TR. 59(I)(7) states:

"If corrective relief is granted, the court shall specify the general reasons therefor. *When a new trial is granted* because the verdict, findings or judgment do not accord with the evidence, *the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted.* Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence." (Emphasis added.).

This trial rule requires great specificity when a new trial is granted. In the instant case, TR. 59(I)(7) merely requires the court to give the general reasons for its correction of its Order.[5]

---

2. The judge who heard this cause of action stepped down from the bench on December 31, 1979.

3. He had been appointed special judge because he was the judge at the original trial.

4. At the May 16, 1980 hearing, Morgan's attorney questioned the trial court's power to correct its own error. TR. 59 specifically provides that the trial court can correct its own error. Prior to the promulgation of our present trial rules, it has been held that the trial court has very broad powers to modify, set aside, or vacate its judgment on its own motion. *Clouser v. Mock* (1959), 239 Ind. 143, 155 N.E.2d 745. This broad power continues under TR. 59.

5. Morgan's reliance on *Lake Mortgage Co., Inc. v. Federal National Mortgage Ass.* (1975), 262 Ind. 601, 321 N.E.2d 556, to require a stricter standard is unwarranted. In that case a new trial was granted. TR. 59(I)(7) requires the stricter standard be followed when a new trial is granted. As the facts in *Lake Mortgage Co., Inc., supra,* are different from those presently before us, *Lake Mortgage* is not controlling.

In looking at the trial court's first amendment[6] to its Order of December 27, 1979, the general reasons for the trial court's corrective relief is not plainly set out for all of the action that was taken. As we can determine the reasons for the actions the trial court took by comparing its December 27, 1979 Order with its March 6, 1980 Order, we deem this error harmless.

The March 6th Order states the trial court understated the total assets of the parties by $2,300.00, yet the Order increases the husband's judgment by $9,725.00. While this Court realizes the form in which the trial court stated its Order makes its Order difficult to decipher, it can be done. It appears that the trial court also neglected to divide $14,000[7] between the parties.

Here is a summary of what the trial court ordered:

I.  December 27, 1979 Order

Husband (Cooper) received:

| | | |
|---|---|---|
| 1. Mobil Home | | $   900.00 |
| 2. Nova automobile | | 1,900.00 |
| 3. Cash Value Life Insurance | | 2,300.00 |
| | | 5,100.00 |
| Lien on House | | 10,000.00 |
| | TOTAL | $15,100.00 |

Wife (Morgan) received:

| | | |
|---|---|---|
| House | $37,000.00 | |
| Less Lien | 10,000.00 | |
| | | $27,000.00 |
| 4. Household Goods | | 1,751.00 |
| 5. Cutlass Automobile | | 5,000.00 |
| 6. Stock | | 800.00 |
| | TOTAL | $34,551.00 |

| | | |
|---|---|---|
| Husband's Property | | $15,100.00 |
| Wife's Property | | 34,551.00 |
| | TOTAL | $49,651.00 |

II.  March 6, 1980 Order

| | |
|---|---|
| Husband's (Cooper's) total award | $24,825.00 |

Composed as follows:

| | |
|---|---|
| Total 1 + 2 + 3 above | 5,100.00 |
| Cash from C.D.s | 14,000.00 |
| | 19,100.00 |
| Lien on house | 5,725.00 |
| TOTAL | 24,825.00 |

Wife (Morgan):

| | | |
|---|---|---|
| House | $37,000.00 | |
| Less Lien | 5,725.00 | |
| | | $31,275.00 |
| Total 4 + 5 + 6 | | 7,551.00 |
| | TOTAL | $38,826.00 |

| | | |
|---|---|---|
| Husband's property | | $24,825.00 |
| Wife's property | | 38,826.00 |
| | TOTAL | $63,651.00 |

Both parties received more assets in the amended order. Although the trial court should have clearly set forth the general reasons for amending its order, its error is harmless as the reasons for the amendment are clear. Neither party was prejudiced by the court's error as they could determine that the court amended its order so as to distribute all of the marital assets.

The trial court's second amendment[8] of its order also does not clearly set forth the general reasons the trial court granted corrective relief as is required by TR. 59(I)(7). This error is also harmless as it can be determined why the trial court amended its order.

Summarizing the second amendment (March 12, 1980) reveals the following:

| | |
|---|---|
| Husband's (Cooper's) total award | $31,825.00 |

Composed as follows:

| | |
|---|---|
| Total 1 + 2 + 3 above | $ 5,100.00 |
| Cash from C.D.s | 14,000.00 |
| | 19,100.00 |
| Lien on house | 12,725.00 |
| TOTAL | $31,825.00 |

| | |
|---|---|
| Wife (Morgan) | $31,826.00 |

| | | |
|---|---|---|
| House | $37,000.00 | |
| Lien | 12,725.00 | |
| | | $24,275.00 |
| Total 4 + 5 + 6 above | | 7,551.00 |
| TOTAL | | $31,826.00 |

| | |
|---|---|
| Husband's property | $31,825.00 |
| Wife's property | $31,826.00 |
| TOTAL ASSETS | $63,651.00 |

Both the March 6th amendment and the March 12th amendment stated, "The Court, therefore, finds that the correct sum of judgment to be entered for the Husband, *in order to balance equally their respective shares*, is the sum of" XX dollars. (Emphasis added.). In comparing the two amend-

---

**6.** This amendment is file marked March 6, 1980.

**7.** This money was in certificate of deposit.

**8.** This amendment is file marked March 12, 1980.

ments, it is obvious that the trial court had made an arithmetic error and was correcting its error so the parties' respective shares would be equal.

In *Reynolds v. Meehan* (1978), Ind., 375 N.E.2d 1119, this Court stated, "The provision requiring general reasons to be given affords the litigants a statement of why the court has acted and makes a record sufficient for the court to review on appeal." Certainly it would have been better for the trial court to plainly state the general reasons for amending its Order; however, when it is obvious from a comparison of the amended orders that the trial court is correcting its arithmetic errors, we find this error harmless. AP. 15(E).

## II.

### Right to Hearing

Morgan argues she was denied due process of law when she was not given an opportunity to be heard before the trial court amended its order on its own motion as provided by TR. 59(B). We disagree.

TR. 59 does not provide for an oral hearing before a court, on its own motion, corrects its own error. If one believes that the trial court has erred when it amended its order, the proper remedy is a motion to correct errors. Morgan filed her motion to correct error and was ordered by the trial court to present any arguments regarding this motion "and other matters that could have been presented at hearing on Husband's Original Motion to Correct Errors." Ms. Morgan was not denied her day in court.

Morgan argues she was put in the unfair position of only being allowed to comment

after the changes in the decree had been made. She claims, "The inherent unfairness of this procedure is clearly apparent."

Underlying Morgan's argument is the assumption that a trial court will not fully consider arguments against its amended order if presented with a motion to correct errors. We do not hold such a negative view of trial courts. We believe that if a trial court is presented with a motion to correct errors, it will make a good faith ruling on that motion. Morgan was not denied due process of law as she was in no way prejudiced by the procedure dictated by our trial rules.

## III.

### Division of Property

Ms. Morgan argues that the trial court did not divide the marital property in a just and reasonable manner.[9] She believes that she is entitled to special consideration because her husband receives a pension from his former job and she does not. She also states that her health condition, the contribution she made to the marriage, and the assets she brought into the marriage entitle her to further special consideration. We disagree.

The disposition of the marriage property is within the sound discretion of the trial court. *Irwin v. Irwin* (1980), Ind.App., 406 N.E.2d 317. We will reverse the trial court's division of the property only upon a showing of an abuse of the trial court's discretion. *Geberin v. Geberin* (1977), Ind. App., 360 N.E.2d 41. To constitute an abuse of discretion, Ms. Morgan must show that the trial court's decision was one which

**9.** IC 1971, 31-1-11.5-11 (Burns 1979 Supplement) lists the factors that shall be considered in determining what is a just and reasonable division of the marital property. They are:

"(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

"(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

"(3) The economic circumstances of the spouse at the time the disposition of the

property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

"(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property;

"(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

was "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, 812.

■ We will not reweigh the evidence; we will consider only that evidence and the reasonable inferences drawn therefrom which is most favorable to the appellee, Cooper. *Jackman v. Jackman* (1973), 156 Ind.App. 27, 294 N.E.2d 620. Even though the evidence might support a conclusion different from the one reached by the trial court, we cannot substitute our judgment for that of the trial court. *Geberin, supra.*

■ We are not persuaded by Ms. Morgan's argument for special consideration due to the "important contribution" she made to the marriage by managing the couple's finances. The evidence in the light most favorable to the trial court's decision reveals that Mr. Cooper also made important contributions to the marriage.[10] We can not say the trial court's decision was an abuse of discretion.

The trial court had already considered the assets Ms. Morgan brought into the marriage when it awarded her $16,000 from the marital assets before dividing the marital property. The trial court acted properly in not considering this factor twice.

This Court has held that future earnings or income is not "property" that is divisible between the parties as neither party has a vested present interest in this future income. *Wilcox v. Wilcox* (1977), Ind.App., 365 N.E.2d 792. Mr. Cooper's pension was not divisible as marital property between Mr. Cooper and Ms. Morgan. Ms. Morgan argues that Cooper's pension favorably affects his economic circumstances positively so that it is only fair that she receive more of their marital property. What Ms. Morgan forgets is that the $16,000 she received for the assets she brought into the marriage favorably affects her economic circumstances. We can not say the trial court abused its discretion when it did not increase her share of the marital property.

Ms. Morgan further argues that her health entitled her to special consideration. The legislature has dictated that maintenance can only be granted when the earning capacity of the spouse is materially affected, IC 31–1–11.5–9. Ms. Morgan does not argue that the evidence before the court meets this standard. She does argue that her poor health will affect her earning capacity such that she should receive more property under IC 31–1–11.5–11(e).

Ms. Morgan presented scant evidence of her poor health. Merely stating that she had reservations that she could hold a full time job and that she had occasionally suffered angina attacks only asked the trial court to speculate the extent, if any, her earning capacity is affected by her health. Ms. Morgan failed to present evidence that she will be able to earn less than Mr. Cooper.[11] The trial court did not abuse its discretion by refusing Ms. Morgan's invitation to speculate.

If Ms. Morgan's health materially affects her earning capacity, she should have presented evidence to support her disability to the court and asked for maintenance under IC 31–1–11.5–11. The trial court had evidence before it that Ms. Morgan had a greater earning capacity than Mr. Cooper. The trial court did not abuse its discretion.

Affirmed.

HOFFMAN, P. J., concurs.

GARRARD, J., concurs with parts II and III; and concurs in result as to part I.

---

10. Mr. Cooper had done all the outside work and general maintenance of the home. He had also built a room in the basement, put in a new septic tank and a new dry well.

11. The evidence before the court showed that when Ms. Morgan quit her job in 1972, she was earning approximately twice the salary that Mr. Cooper earned.