In re the MARRIAGE OF Elinor
SHARP, Appellant-Petitioner,

and

Harry Sharp, Appellee-Respondent.

No. 3–281A60.

Court of Appeals of Indiana,
Third District.

Oct. 29, 1981.

---

Robert D. Lee, Patricia O'Brien Cotter, South Bend, for appellant-petitioner.

Richard D. Bonewitz, Hammerschmidt, Bonewitz & Miller, South Bend, for appellee-respondent.

STATON, Judge.

Before the hearing on the petition to dissolve the marriage of Elinor Sharp and Harry Sharp, the trial court ordered Harry to pay Elinor maintenance of $75.00 per week during the pendency of the dissolution action. After a hearing on the petition, the trial court entered a dissolution decree which dissolved the marriage of Elinor Sharp and Harry Sharp, divided the marital property, and ordered Harry to pay Elinor $75.00 per week maintenance. Harry then filed his petition to terminate maintenance.[1] After a hearing on Harry's petition, the trial court issued supplemental findings and conclusions in which it revoked its order of spousal-maintenance and ordered Elinor to reimburse Harry for all the maintenance payments that had been made. The trial court also provided that Harry could elect to take credit for the reimbursement in the division of the marital property if the division was not completely effected.

Elinor raises the following issues:

(1) Did the trial court err in finding in its supplemental findings and conclusions that Elinor is not physically or mentally incapacitated to the extent that her *ability* to support herself is materially affected?

(2) Did the trial court err in rescinding its previous maintenance order and in ordering that Elinor reimburse Harry for all maintenance payments?

Harry raises the following issues for our review:

(3) Did the trial court err by overvaluing certain property?

(4) Did the trial court abuse its discretion in its division of the marital property?

(5) Did the trial court err by including Harry's future retirement benefits in the marital property?

We affirm issue one, and we instruct the trial court to modify its judgment in regards to issues two, three and five. We need not discuss issue four due to our disposition of issue three.

## I.

### Ability to Support

The trial court, after hearing the evidence on the petition to dissolve the marriage, stated the following as its finding of fact no. 6:

"Petitioner-wife is a high school graduate age 49 years, has a background of unskilled labor and is a victim of rheumatoid arthritis, presently under treatment by Howard R. Engel, M.D. At trial Dr. Engel's testimony concerning petitioner can be summarized

"1) she began treatment with gold shots 12/21/79 and these will continue for life.

"2) he directed her to cease employment

"3) she has 20 ° flexation, 45 ° extention [*sic*] in her right writst [*sic*]; 30 ° flexation 80 ° extension in her left

"4) she experienced more trouble on her return to work, that this 'return to work hurt her'

"5) her present condition will never improve and damage done is irretrievable

"6) she can work, but for short periods since this 'disease means the more you do the more you hurt' and goes 'in mathematical progression.'

"7) there is no procedure for wrist surgically

"8) as disease 'burns itself out' there is less pain but more deformity

"9) could work where hands not used, but her feet also would flare up

"10) she cannot type, would have difficulty working in a factory

"11) her range of motion worse now than December of 1979 and it will not improve"

Elinor was diagnosed as having rheumatoid arthritis in November of 1979. From

---

1. Harry also filed a motion to correct errors. He withdrew his motion to correct errors. After hearing was had on his petition to terminate maintenance, he filed a new motion to correct errors. This motion was filed within 60 days of the entry of judgment. Ind. Rules of Procedure, Trial Rule 59.

March 27, 1980 to April 28, 1980 Elinor was on a medical leave of absence due to her rheumatoid arthritis. One and a half weeks after she went back to work, all workers of her seniority were laid off. Elinor testified that during the 1½ weeks she was back at work she had managed to do her work even though it was quite painful.

█ The trial court awarded Elinor maintenance under IC 1979, 31–1–11.5–9(c).[2] The trial court uses its discretion in awarding maintenance

> "after considering such factors as the financial resources of the party seeking maintenance (including matrimonial property apportioned to her), the standard of living established in the marriage, duration of the marriage, and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. Even though the court finds a spouse's supportive ability is materially impaired, a maintenance award is not mandatory."

*Temple v. Temple* (1975), 164 Ind.App. 215, 328 N.E.2d 227, 230.

Harry filed a petition to terminate maintenance. The trial court granted his petition, setting forth the following as part of its findings of fact:

> "4. At hearing thereon held October 7 and 15, 1980 evidence was adduced finding that
>> "a. petitioner-wife did not work for the period May 6 through July 2, 1980;
>> "b. that she returned to her former employment at CTS Corporation immediately thereafter and remained employed to the date of said hearing at an hourly rate of $7.38, with a minimum of 32 hours weekly to a high of 40 hours weekly;
>> "c. that such employment has been had and pursued by petitioner-wife, notwithstanding the testimony of her physician, Dr. Howard P. [*sic*] Engel."

On appeal, Elinor argues that her *ability* to support herself has not changed. In support of this argument, she notes that the original medical evidence presented at the hearing on the petition to dissolve the marriage has not been contradicted. She argues that the trial court erred in terminating the maintenance payments she received because the only change in circumstances that had occurred was that she had returned to work and was working almost 40 hours a week.

In *Farthing v. Farthing* (1979), Ind.App., 382 N.E.2d 941, 944, this Court stated that the standard to be used to determine if spousal maintenance should be modified is IC 1979, 31–1–11.5–17. This statute requires a showing of changed circumstances so substantial and continuing as to make the terms of the maintenance unreasonable.

█ We shall reverse the trial court's decision only when it has abused its discretion. To constitute an abuse of discretion, Elinor must show that the trial court's decision was one which was "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, 811.

█ We will not reweigh the evidence; we will consider only that evidence and the reasonable inferences drawn therefrom which are most favorable to the appellee, Harry. *Morgan v. Cooper* (1981), Ind.App., 415 N.E.2d 729, 733. Even though the evidence might support a conclusion different from the one reached by the trial court, we can not substitute our judgment for that of the trial court. *Id.*

█ We conclude the trial court did not abuse its discretion in terminating the maintenance payments to Elinor. At the first hearing, Elinor's physician testified that due to the pain, Elinor could probably

**2.** IC 31–1–11.5–9(c) states:

> "The court may make no provision for maintenance except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of

such incapacitated spouse to support himself or herself is materially affected, the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court."

be able to do her job with difficulty. He was unsure that she could do her job for the period of time necessary to maintain her job. He had directed her to cease employment and noted she had told him she had experienced more difficulty when she returned to work after her medical leave of absence. From the testimony at the termination hearing on October 7, 1980, the court learned that Elinor had been back to work for four months. She had worked 40 hour weeks except for the last two. During those weeks she worked 36 hours and 32 hours. The trial court's decision that Elinor did have the ability to support herself despite her physical condition is not clearly against the facts and circumstances before the trial court.

Elinor also argues that the trial court erred by failing to retain jurisdiction over the issue of spousal maintenance. Although the order of the trial court did not specifically retain jurisdiction over the issue, it did not specifically relinquish jurisdiction either. The trial court did state the following:

"This court retains jurisdiction over the issue of spousal-maintenance to be paid by respondent-husband, Harry Sharp, to petitioner-wife, Elinor Sharp; and such matter will be considered upon further hearing following proper petition of said petitioner-wife, Elinor Sharp."

The trial court did not relinquish jurisdiction on this issue.

## II.

### Reimbursement

The trial court ordered its previous order for maintenance revoked and ordered Elinor to reimburse Harry for all the maintenance payments that had been made. On appeal, Elinor argues that any modification of maintenance can only operate prospectively and not retroactively.

■ Although this issue has not been decided previously in Indiana, Elinor cites child support cases such as *Jahn v. Jahn* (1979), Ind.App., 385 N.E.2d 488, 490 in which this Court stated that once support installments have accrued, the court is without power to reduce or vacate such orders retrospectively. Only future payments may be reduced or vacated. We believe the same to be true of maintenance payments. The trial court did err in retroactively revoking its order for maintenance and ordering that Elinor reimburse Harry. We reverse on this issue.

## III.

### Valuation

Harry argues that the trial court overvalued certain property and that these values are not supported by the evidence. He sets forth the following table:

| "ITEM | COURT'S VALUE | EVIDENCE VALUE | AMOUNT OF OVERVALUE |
|---|---|---|---|
| "1978 Chevrolet 1½ T. pick-up truck | $ 2,750 | $ 2,600 | $ |
| Farm Tractor | 2,100* | 1,800 | |
| Total of Both | 4,850 | 4,400 | |
| less amount owed | | −2,100 | |
| | | 2,300 | 2,550.00 |
| Grain Box | 325 | 250 | 75.00 |
| Mower | 450 | 300 | 150.00 |
| Stock Rack | 40 | 50 | (10.00) |
| Tools & Welder | 3,000* | 900 | 2,100.00 |
| 50 h.p. Johnson motor | 900* | JUNK | 900.00 |

| "ITEM | COURT'S VALUE | EVIDENCE VALUE | AMOUNT OF OVERVALUE |
|---|---|---|---|
| American National Bank Account | 1,413.02 | | |
| American Nat'l Bank (closed 8–5–79) | 1,688.00 | 193 | 2,908.02 |
| Total of accounts | 3,101.02 | | |
| 10-acre tract, less 2 acres | 20,000.00 | 16,000 | 4,000.00 |
| Total Overvalue: | | | $ 12,673.02 |

\* Values as set out in Petitioner's contentions;
not by the evidence"

■ We will not reweigh the evidence; we will consider only that evidence and all the reasonable inferences drawn therefrom which is most favorable to Elinor. *In Re The Marriage of Gray* (1981), Ind.App., 422 N.E.2d 696, 698. The evidence regarding the accounts at the American National Bank conflicted. The trial court chose to believe Elinor's testimony about the accounts at the American National Bank. We will not choose to believe Harry's testimony over Elinor's testimony. Nor will we choose between the various evidence concerning the size of the land that Harry argues is eight acres worth $16,000.[3] The trial court considered the conflicting evidence and made its determination. We will not reweigh this evidence.

Some of the values assigned to the property are not supported by the evidence. The court stated that the tools and welder are worth $3,000. The only testimony regarding the value of the tools was by Harry. He stated they are worth $500. His son stated that Harry had previously valued the welder at $1,000. The highest value of these items, supported by testimony is $1,500. There also was no testimony that the outboard motor is worth $900. These overvaluations decreased Harry's share of the marital property by three per cent. Therefore, the trial court's error can not be considered harmless. The trial court is instructed to re-assess the value of the marital property in accordance with the evi-

dence before it. The trial court must also redetermine its distribution of the marital property since its present division is not based on the true value of the marital property.

## IV.

### Retirement Benefits

■ Harry argues that the trial court based its finding of fact no. 7 on evidence not received at trial. Finding of fact no. 7 states:

"7. Respondent has been continuously employed since September 23, 1952 with the Bendix Corp., South Bend, Indiana, as a power house engineer. In 1979, the respondent earned $25,479.45 and the petitioner earned $14,625.76. In accordance with the benefits described in the May issue of Bendix News Bulletin published by the U.A.W., the respondent will be eligible for retirement in 1982 on the basis of 'Thirty and Out', under which he will have retirement benefits in the sum of $935.00 per month and will be earning $14.00 to $15.00 per hour prior to retirement. As part of said contract, the respondent will participate in group life and disability insurance in the sum of $21,500.00, together with survivor income benefits as well as forty-two paid holidays."

Harry rightly states that the Bendix News Bulletin was not received into evidence;

3. It was stipulated that the land is worth $2,000 per acre.

however the trial court did receive other evidence, without objection by Harry, that Harry would retire under a program called "Thirty and Out" and that he would receive $935 a month retirement benefits. There is no evidence supporting the last sentence of finding no. 7. This sentence should be deleted from the findings of fact by the trial court.

Judgment affirmed in part, reversed and remanded in part with instructions that the trial court modify its judgment to conform with this opinion.

GARRARD, J., concurs in I, II and IV, and concurs in result as to III.

HOFFMAN, P. J., concurs with opinion.

HOFFMAN, Presiding Judge, concurring.

I concur in the majority opinion except that I do not find an overvaluation of Harry's share in the amount of 3% reversible error. Such is not a substantial disparity so as to be reversible error. However, I find appellee's statement contained in his brief on cross-errors, "The Petitioner-Appellant will not here review the evidence on all the valuations of real and personal property, as the Court of Appeals can examine the transcript on particular points should they so desire," a confession of error and would concur in the majority in reversing it on that issue.