In the Matter of R.S., J.S., T.S., and M.S. (minors).

Lola Sons, Appellant,

v.

Lake County Office of Family and Children, Appellee.

No. 45A03–0202–JV–46.

Court of Appeals of Indiana.

Sept. 10, 2002.

School with reference to termination of the contract.

James J. Krajewski, Munster, IN, Attorney for Appellant.

Salvador Vasquez, Merrillville, IN, Donald W. Wruck, III, Crown Point, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Respondent Lola Sons ("Mother") appeals an order terminating her parental rights in R.S., J.S., T.S. and M.S., upon the petition of the Appellee–Petitioner Lake County Office of Family and Children ("the OFC"). We affirm.

### Issues

Mother presents three issues for review:

I. Whether Indiana Code section 31–35–2–4 is unconstitutional.

II. Whether the termination order is supported by sufficient evidence.

III. Whether the trial court's order on its sua sponte motion to correct error is erroneous.

### Facts and Procedural History

On May 6, 1999, Mother's four children were removed from her home after OFC caseworkers determined that the residence was without electricity, running water or food. Petitions to involuntarily terminate the parental rights of Mother and the putative father ("Father"), who is not a party to this appeal, were filed by the OFC on December 13, 2000. Evidence was heard on July 9, 2001, September 26, 2001 and October 26, 2001. Initially, the court granted the termination petitions only as to Father, but on November 26, 2001, purportedly vacated the order denying the termination of Mother's parental rights pursuant to Indiana Trial Rule 60. On November 28, 2001, the trial court entered an order nunc pro tunc, indicating that the sua sponte action had been taken pursuant to Indiana Trial Rule 59, rather than Indiana Trial Rule 60. At the conclusion of a hearing on motion to correct error held on December 19, 2001, the trial court terminated Mother' parental rights. Mother now appeals.

### Discussion and Decision

#### I. Constitutionality of Indiana Code section 31–35–2–4

Mother claims that Indiana's parental rights termination statute denies parents procedural due process because the OFC may present evidence as to a child's best interests before a determination of parental unfitness is made. She claims that the parent's constitutional right to enjoy the family free from State interference is thus improperly subordinated to the rights of the child, in contravention of *Santosky v. Kramer*, 455 U.S. 745, 763, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), which requires an evidentiary standard of clear and convincing proof to support the termination of parental rights.

We need not address the claim because it was not raised in the termination proceedings, affording the OFC an opportunity to respond and the trial court an opportunity to adjudicate the claim of alleged constitutional infirmity. Challenges to the constitutionality of a civil statute may be waived if they could have been raised to the trial court but the appellant failed to do so. *Duncan v. Duncan*, 764 N.E.2d 763, 769 (Ind.Ct.App. 2002). Mother did not challenge the right of the OFC to offer evidence of the children's best interests on constitutional grounds at the trial court, and has accordingly waived appellate review of her constitutional claim.

#### II. Sufficiency of the Evidence

##### A. Standard of Review

This court will not set aside the trial court's judgment terminating a par-

ent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind.Ct.App.1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, this court neither reweighs the evidence nor judges the credibility of the witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

### B. Requirements for Involuntary Termination of Parental Rights

■■■ Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *In re L.S.*, 717 N.E.2d 204, 208 (Ind.Ct.App.1999), *trans. denied.* The purpose of terminating parental rights is not to punish the parents, but to protect their children. *Id.*

Indiana Code section 31–35–2–4(b) sets out the elements that the OFC must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) One (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

■■■ The trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *In re A.A.C.*, 682 N.E.2d at 544. Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *Id.* The trial court need not wait until the child is irreversibly harmed such that his physical, mental and social development is permanently impaired before terminating the parent-child relationship. *Id.* A parent's habitual pattern of conduct is relevant to determine whether there is a substantial probability of future neglect or deprivation of the child. *In re M.M.*, 733 N.E.2d 6, 13 (Ind.Ct.App.2000).

### C. Analysis

Mother contends that the OFC presented insufficient evidence to support the termination of her parental rights. Specifically, she argues that the OFC failed to prove that there is a reasonable probability that the conditions which resulted in her children's removal will not be remedied or that termination is in the best interests of the children. We disagree.

The evidence most favorable to the judgment discloses that Mother was historically unable to provide adequate housing and supervision for her children. Mother's sister testified that she provided a home for Mother and her children "off and on." (Tr. 46.) Mother and the children sometimes resided with Father, whom Mother described as a drug addict. One of the children, aged ten, had contracted gonorrhea after sexual involvement with another child. The family members were repeatedly infested with lice, and the children were excessively absent from school. The foster parents testified that the children came into their homes lacking hygienic or social skills.

Since the children's removal, Mother had sporadically resided with a relative, with Father, in shelters, motels, a vehicle and jail. Mother was chronically unemployed. Mother failed to comply with the requirements of programs offered to her, including substance abuse treatment and parenting classes. Mother appeared at two parenting classes, but fell asleep each time. The sole drug screen for which Mother appeared during the reunification period yielded a positive result. Mother testified that her sister should have the children until she could "get on her feet." (Tr. 58.)

In light of the foregoing, there is clear and convincing evidence from which the trial court could conclude that the conditions leading to the children's removal will probably not be remedied, and that termination is in the children's best interests.

### III. Motion to Correct Error

Mother alleges that the trial court erroneously invoked Indiana Trial Rule 59 to correct error in that the subsequent order finding the first order to be "against the weight of the evidence" failed to specifically identify the perceived error and therefore hindered Mother's appeal.[1] To support her request for reversal, Mother relies upon *Lake Mortgage Co., Inc. v. Federal National Mortgage Ass'n.*, 262 Ind. 601, 321 N.E.2d 556 (1975), wherein this Court reversed a judgment of the trial court granting a new trial while articulating only a general reason for doing so.

However, *Lake Mortgage* is distinguishable from the instant case in that a new trial was granted. "[T.R. 59] requires great specificity when a new trial is granted." *Morgan v. Cooper*, 415 N.E.2d 729, 730 (Ind.Ct.App.1981). On the other hand, T.R. 59(J)(7) provides in pertinent part: "The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation ... alter, amend, modify or correct judgment.... If corrective relief is granted, the court shall specify the general reasons therefor." Here, the trial court moved to correct its ruling as against the weight of the evidence. In addition to giving a general reason for the correction of the judgment, at the hearing on motion to correct error, the trial court judge summarized her review of the evidence adduced at the three evidentiary hearings and specifically identified the evidence supporting termination. Mother was not hindered in her ability to formulate her appeal challenging the sufficiency of the evidence to support termination. Accordingly, reversal is not required.

### Conclusion

Mother has failed to properly challenge the constitutionality of Indiana Code sec-

---

1. T.R. 59(B) provides as follows: "The motion to correct error, if any, may be made by the trial court, or by any party." Subsection (D) provides in pertinent part: "Any error raised however shall be stated in specific rather than general terms and shall be accompanied by a statement of facts and grounds upon which the error is based."

tion 31–35–2–4. The OFC established by clear and convincing evidence the requisite elements to support the termination of Mother' parental rights. Finally, the trial court's order on its sua sponte motion to correct error was proper.

Affirmed.

MATHIAS, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

Although I concur, I note that in addition to the *Lake Mortgage* case distinction based upon the fact that there, a new trial was granted, the Motion to Correct Errors was filed by one of the litigants and not the trial court itself.

In this regard I think T.R. 59(D) in conjunction with T.R. 59(B) would appear to be somewhat inconsistent with T.R. 59(J).[2] In construing T.R. 59 in its entirety, I believe the only logical application of T.R. 59(D) is to limit it to a Motion to Correct Errors filed by one of the litigants challenging the verdict or the trial court's judgment or ruling and that it is not applicable to a "Motion" to Correct Errors "filed" by the trial court itself.

2. To be sure, if the trial court itself initiates the "Motion to Correct Errors," the party who would be aggrieved by such error correction is entitled to notice of the trial court's change of position and is entitled to be heard on the matter. However, I cannot conceive that the trial court under T.R. 59(B) is required to prepare a formal motion and to file it with the Clerk of Court rather than merely to enter an order advising the parties of the court's proposed or intended action.